UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

TIGER SOURCING (HK) LIMITED,

                    Plaintiff,

v.

GMAC COMMERCIAL FINANCE CORPORATION F/K/A
GMAC COMMERCIAL FINANCE-CANADA AND
SUMMIT BRIDGE NATIONAL INVESTMENTS, LLC,

                    Defendants.

---------------------------------------------------------x

Case No. 08 Civ. 3846 (CLB)

**AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

STATE OF MICHIGAN   )
                                ) ss.:
COUNTY OF OAKLAND  )

        JEFFREY A. DOWD, being duly sworn deposes and says:

        1.      I am a Director of GMAC Commercial Finance Corporation-Canada ("GMAC CF-Canada"), incorrectly sued herein as "GMAC Commercial Finance Corporation f/k/a GMAC Commercial Finance Canada." I am personally familiar with the facts hereinafter set forth and I submit this affidavit in support of GMAC CF-Canada's Motion to Dismiss the Complaint for lack of subject matter jurisdiction due to the absence of diversity. Specifically, there is no diversity jurisdiction because the plaintiff is an alien and one of the defendants is an alien.

        2.      As set forth in the Complaint, this is an action for breach of contract. The parties to the Contract, dated May 3, 2005, (Exhibit "A") are the Plaintiff, Tiger Sourcing (HK) Limited, which is a Hong Kong corporation, and GMAC CF-Canada. Effective December 22, 2006, GMAC CF-Canada assigned its rights and interests in the underlying transaction to

defendant Summit Bridge National Investments, LLC. GMAC CF-Canada denies any and all liability on the underlying breach of contract claim. At this time, this case should be dismissed for lack of federal subject matter jurisdiction because there are aliens on both sides of the caption, and therefore, there is no diversity jurisdiction for the reasons more fully set forth in GMAC CF-Canada's accompanying Memorandum of Law.

3. While GMAC CF-Canada does not presently maintain any place of business in Canada, it is, and at all relevant times has been, a licensed Canadian corporation. GMAC CF-Canada continues to do business and service loans in Canada. The officers and directors of GMAC CF-Canada are located in the United States, primarily in New York and Michigan.

4. Contrary to the suggestion in the Summons and Complaint, there is no entity known as "GMAC Commercial Finance Corporation" nor has GMAC CF-Canada changed its name or merged into any other entity.

_____
JEFFREY A. DOWD

Sworn to before this
12th day of June, 2008

_____
Notary Public

TRICIA A. RONAT DENNIS
NOTARY PUBLIC, STATE OF MI
COUNTY OF LAPEER
MY COMMISSION EXPIRES May 11, 2011
ACTING IN THE COUNTY OF
OAKLAND

1049949.1

- 2 -

# EXHIBIT A

# SUBORDINATION AGREEMENT

TO:  GMAC Commercial Finance Corporation - Canada ("GMAC")

RE:  Tiger Brand Holdings Corp. (the "Borrower")

WHEREAS:

(a) GMAC has or is about to enter into a credit agreement (the "GMAC Credit Agreement") with the Borrower and in connection therewith, the Borrower has granted or will grant security in favour of GMAC (the "GMAC Security") on all property, assets, rights and undertakings of the Borrower of whatsoever nature and kind, now owned or hereafter acquired by or on behalf of the Borrower and wherever located to secure any and all debts, liabilities and indebtedness, direct or indirect, present and future, of the Borrower to GMAC, including, without limitation, any and all indebtedness existing under or in connection with the GMAC Credit Agreement; and

(b) TIGER SOURCING (HK) LIMITED (the "Supplier") is a supplier of the Borrower and has provided the Borrower with a US$3.5 million line of credit pursuant to the letter agreement between the Borrower and the Supplier dated April 21, 2005 (the "Supplier Line of Credit");

NOW THEREFORE, in consideration of GMAC providing financing to the Borrower from time to time pursuant to the GMAC Credit Agreement and for other good and valuable consideration, the receipt by the Supplier and sufficiency of which is hereby acknowledged, the Supplier acknowledges and agrees as follows:

1. Any terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the GMAC Credit Agreement.

2. With respect to any present or future property of the Borrower, the Supplier hereby waives, to the maximum extent permitted by law, and agrees not to assert, any rights as an unpaid supplier, including, for greater certainty, rights of revendication or repossession in consequence of being an unpaid supplier and rights under Section 81.1 of the *Bankruptcy and Insolvency Act* (Canada) (the "Supplier Rights"). The Supplier's waiver and agreement provided in this Section 2 may be pleaded by GMAC as a bar and an estoppel in the event that the Supplier claims or asserts any Supplier Rights.

3. No lien in favour of the Supplier (the "Supplier Lien") against any present or future property of the Borrower, whether by way of security interest, hypothec, lien, title or otherwise, shall secure any amounts or obligations except, at any date, the lesser of US$3.5 million and the aggregate unpaid purchase price for goods sold and delivered to the Borrower in the ordinary course before such date and not paid for, to the extent that all actions and matters required at law in order to perfect such Supplier Lien have been complied with. Except for the Supplier Lien as aforesaid, no claims of the Supplier shall be secured by any lien, charge, encumbrance, security interest or the Supplier Rights.

DOCSTOR: 944174\5

4. The Supplier Lien shall be fully postponed and subordinated to the GMAC Security until all Obligations other than the Term Loan and the other Obligations arising solely from the Term Loan have been satisfied in full (including repayment of principal owing under the Revolving Credit Facility, all interest and any costs of enforcement). With respect to the Term Loan and the other Obligations arising from the Term Loan, the GMAC Security shall be fully postponed and subordinated to the Supplier Lien. Notwithstanding these lien priorities, the Supplier acknowledges and agrees that the Borrower shall be entitled to make each of the mandatory prepayments set out in Section 2.10 of the GMAC Credit Agreement in permanent reduction of the Term Loan (a copy of which is attached hereto) subject to the provisions of Section 6 hereof upon the issuance of a GMAC Default Notice.

5. Until all Obligations other than the Term Loan and the other Obligations arising solely from the Term Loan have been satisfied in full (including repayment of principal owing under the Revolving Credit Facility, all interest and any costs of enforcement) and without limiting Section 3 hereof, the Supplier shall not (a) take any actions or steps, by proceedings or otherwise, to enforce any rights or remedies in respect of any present or future property of the Borrower including, without limitation, pursuant to the Supplier Lien or (b) use or rely upon any Supplier Rights or any Supplier Lien granted by the Borrower to the undersigned and/or any registrations in respect of such security filed pursuant to any personal property security legislation in Canada, the United States or elsewhere to assert a security interest, hypothec, lien, title or other interest in any present or future property of the Borrower in priority to the GMAC Security as same secures all Obligations other than the Term Loan and the other Obligations arising solely from the Term Loan.

6. Until all Obligations other than the Term Loan and the other Obligations arising solely from the Term Loan have been satisfied in full (including repayment of principal owing under the Revolving Credit Facility, all interest and any costs of enforcement), the Supplier shall be entitled to receive payment for goods sold and delivered to the Borrower in the ordinary course provided that it has not received notice in writing from GMAC ("GMAC Default Notice") that an Event of Default has occurred. Upon receipt by the undersigned of a GMAC Default Notice prior to such satisfaction, (i) the Supplier shall not be entitled to receive payment (or any interest thereon) for any goods sold and delivered to the Borrower prior to the date of the GMAC Default Notice and (ii) notwithstanding any other provision of the Credit Agreement, no payments shall be made on the Term Loan or the other Obligations arising solely from the Term Loan other than the mandatory repayments specified in Section 2.10 (a), (b) and (e) of the GMAC Credit Agreement. A GMAC Default Notice may be sent prior to such satisfaction to the Supplier by registered mail or facsimile to the address or facsimile number set forth below (or at such other address or facsimile number hereafter specified in writing by the Supplier) and shall be deemed to have been received by the Supplier on the fifth (5th) Business Day after posting if sent by registered mail and otherwise on the date of transmission (as evidenced by confirmation of receipt) as the case may be.

7. Without prejudice to the prohibitions in this Subordination Agreement:

(a) if the Supplier receives any payment in violation of this Subordination Agreement, the Supplier shall receive such payment in trust for GMAC and shall remit it to GMAC forthwith upon receipt to be applied to reduce the Obligations other than the Term Loan and the other Obligations arising solely from the Term Loan. The Supplier shall be liable to GMAC to the extent of an amount equivalent to any such sums received and not remitted to GMAC; and

(b) if the Supplier takes possession or causes possession to be taken of any property or assets of the Borrower or otherwise enforces the Supplier Lien in violation of this Subordination Agreement, then, until all Obligations other than the Term Loan and the other Obligations arising solely from the Term Loan have been satisfied in full, the Supplier shall yield or shall cause any party holding the security for its benefit to yield, on demand, possession thereof and any proceeds resulting from the realization thereupon to GMAC or any party acting for GMAC to be applied to reduce the Obligations other than the Term Loan and the other Obligations arising solely from the Term Loan.

8. Except for the mandatory payments provided for in Section 2.10 (a), (b) and (e) of the GMAC Credit Agreement, GMAC shall not have any rights to enforce the GMAC Security for the Term Loan or to receive payments in respect of the Term Loan following receipt by GMAC of a written notice from the Supplier that Borrower is in default of paying an amount due to the Supplier, until such default is cured or the Supplier Line of Credit is repaid in full and, except for the mandatory payments provided for in Section 2.10 (a), (b) and (e) of the GMAC Credit Agreement, the provisions of Sections 5, 6 and 7 hereof shall apply in favour of Supplier "*mutatis mutandis*".

9. This Subordination Agreement will continue in force as long as the Borrower is indebted or liable (either directly, indirectly or contingently) to GMAC.

10. This Subordination Agreement will enure to the benefit of and be binding upon the respective successors and assigns of the parties hereto.

11. The interpretation, validity and enforcement of this document shall be governed by and construed under the laws of the Province of Ontario.

12. The priorities herein referred to shall apply notwithstanding any contrary priority or registration or filing and without the necessity of any further documentation on the part of either GMAC or the Supplier. However, it is understood that each of the undersigned shall, at the expense of the Borrower, enter into any documentation which either GMAC or the Supplier may require in order to confirm, formalize or give effect to the terms hereof.

13. This Subordination Agreement may be executed in any number of and by different parties hereto, on separate counterparts, all of which when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

- 4 -

DATED as of the __3rd__ day of __May__, 2005.

                              TIGER SOURCING (HK) LIMITED

Per: _____
Name: JOHN GAO
Title: PRESIDENT

Address for Notices:

Unit 410, Lippo Sun Plaza, 28 Canton Road
Tsim Sha Tsui, Kowloon, Hong Kong

GMAC COMMERCIAL FINANCE
CORPORATION - CANADA

Per: _____
Name: _____
Title: _____

Address for Notices:

150 York Street, Suite 1314
Toronto, ON M5H 3S9, Canada

DATED as of the 3rd day of May, 2005.

           **TIGER SOURCING (HK) LIMITED**

           Per: _____
           Name:
           Title:

           Address for Notices:

           Unit 410, Lippo Sun Plaza, 28 Canton Road
           Tsim Sha Tsui, Kowloon, Hong Kong

           **GMAC COMMERCIAL FINANCE**
           **CORPORATION - CANADA**

           Per: _[signature]_
           Name: John R. Lauldfeld
           Title: Executive Vice President

           Address for Notices:

           150 York Street, Suite 1314
           Toronto, ON  M5H 3S5  Canada

- 5 -

The undersigned acknowledges that:

1. it has taken communication of the foregoing Subordination Agreement, is in agreement with the terms thereof to the extent that it is affected thereby and undertakes to cooperate with respect thereto;

2. this Subordination Agreement is for the benefit of the parties thereto only as between themselves and in no manner diminishes, as between either of the parties and the undersigned, any security or rights now or hereafter existing; and

3. no rights or commitments have been created or implied in favour of the undersigned by this Subordination Agreement, and the parties to this Subordination Agreement may, as between themselves, in their sole discretion, alter the terms thereof as they see fit, without reference to the undersigned.

TIGER BRAND HOLDINGS CORP.

Per: *(signature)*
Name: KENNETH S. LAZAR
Title: PRESIDENT

Address for Notices:

c/o 105 Corporate Park Drive
White Plains, NY 10605 U.S.A.